Judge, the next case today is United States v. Stephen A. Saccoccia, Appeal No. 20-2045. Attorney Hopwood, please introduce yourself for the record and proceed with your argument. Yes, Attorney Sean Hopwood, representing Appellant Stephen Saccoccia. Good morning, Your Honors, and may it please the Court. Good morning, Counselor. I'd like three minutes for rebuttal, please. Okay. Deciding motions for compassionate release is a difficult enterprise. There's a brand new statutory scheme, and judges have to make difficult decisions regarding extraordinary and compelling circumstances and how to rebalance the 3553A factors in light of new circumstances that have arisen since the initial sentencing. Those determinations will require a special care, especially in a case like this one where the sentencing factors lead in different directions. The District Court judgment here did not exhibit the requisite care. The District Court made several legal errors. First, the Court wrongly found Stephen Saccoccia's answer claim waived, even though that claim had been briefed by both parties in numerous pleadings. Second, as to the long sentencing claim, Saccoccia cited the Second Circuit's Brooker decision for the proposition that there is no applicable policy statement for defendant-filed motions, but the Court used the Brooker defendant's circumstances as a legal standard for measuring whether Saccoccia's circumstances were extraordinary and compelling. And finally, the District Court abused its discretion by failing to address or consider several of the mitigating arguments for why the Section 3553A factors supported some kind of sentence reduction here. And I'll go to the 3553A factors first, which is the Court recognized and acknowledged some of them, but failed to acknowledge or consider four major mitigating circumstances. Mr. Hopwood, we have said in dozens of opinions on direct sentencing appeals that the District Court has no responsibility to tickle off the 3553A factors one by one, or to rebut each and every argument made in mitigation one by one. That absence of some reason to believe the contrary will assume that the District Court considered all of the factors, even if it only chose to emphasize a few in rendering its decision. Why isn't that jurisprudence equally applicable to dispositions of claims for compassionate relief? Judge Selye, I think it is equally applicable, but I don't think you can determine from this record whether the judge considered all the factors and whether the judge got the law right. Under compassionate release, which is a forward-looking statute, it requires the Court to reevaluate the 3553A factors as they are today and not as they are at the initial sentencing, taking into consideration the extraordinary and compelling circumstances. And if you read the District Court's opinion here, it seems to read like all of the 3553A factors applied as they did in the 1993 sentencing without regards to the changed circumstances here. And so that would be an error of law. Well, if that were true, it might be an error of law. I didn't get the same impression reading Judge Lisi's decision. Well, Your Honor, Judge Lisi did not take into consideration, did not say anything about the fact that this defendant, even if you grant that the nature of the offense was the far most serious it could possibly be, there was no discussion about the fact that this defendant has served 30 years of imprisonment, which goes to the nature of the punishment, that this person in prison has received inadequate medical care, hasn't been adequately tested or treated for cancer. It doesn't take into consideration the disproportionate length of the sentence in comparison to other money laundering offenses. Now, the judge recognized that we made an argument that this sentence was disproportionate in comparison to the principles of the drug cartel in this case. But the District Court said nothing about our major argument, which is a 660-year sentence for money laundering convictions is grossly disproportionate and creates an unwarranted sentencing disparity. And there was no mention of that in the entire order. You combine that with the pretty fundamental legal errors that were made, and I just don't think this court can have any assurances that the 3553A factors were considered in a proper manner and that they were balanced properly. The 660-year sentence was affirmed in a written opinion, I believe Judge Selyer wrote it, saying the sentence was the equivalent of life without the possibility of parole. So, 30 years is a drop in the bucket. Well, 30 years is not a drop in the bucket, Judge Hawkins, when you reevaluate the 3553A factors now. If it were the case that you did not have to conduct a new analysis, there would be no reason to have compassionate release, because no extraordinary and compelling circumstance would ever outweigh the nature of the offense when it was first committed. And so the judge had to grapple with all of these new circumstances and the fact that Mr. Sekoja is not coming here as someone who served four or five years of a sentence. He's coming here as someone who served 30 years in federal prisons and whose medical claims had weight and weren't considered at all, either in the 3553A analysis or whether there were extraordinary and compelling circumstances. When you say claims weren't considered at all, your claims are just another way of saying that you raised arguments in mitigation. And we've said over and over again that the judge doesn't have to respond to arguments in mitigation. The judge said she evaluated the 3553A factors. She emphasized the two factors that she thought were controlling in this case in denying compassionate relief. I'm struggling with the notion. Unless a compassionate relief hearing is supposed to become a satellite sentencing proceeding, I'm struggling with the notion of what more we can expect district courts to do on these notions. Well, at the very least, Judge Salyer, she should have considered the most pressing medical issue in the case. But she said it was undeveloped. And it was undeveloped because there was no diagnosis. But there was evidence in the BOP's medical record that he potentially has cancer and then was not given treatment for five months. And none of that was considered. Well, I mean, she considered it. You may disagree with her conclusion that it was undeveloped. I do, Your Honor. Undeveloped, I took it to mean that there was no definitive diagnosis and therefore the claim could be raised at a future date if as and when there was a diagnosis. Has there been a diagnosis? I mean, because at the time you filed your brief, you had a medical appointment coming up. I mean, what's happened since then? Well, I didn't want to get into that because obviously it's not on the record. And, you know, none of that was before the district court. But at the time the district court considered this compassionate release motion, he had been told that there was a far likelihood that he had cancer and that testing needed to occur within 30 days. And it didn't happen. At least by the time of the district court's decision, five months had gone by. But, counselor, there's no number of time bar. I mean, if he's diagnosed, if he's actually diagnosed with cancer, there's nothing that prevents you from filing another motion for compassionate release if you think it's warranted at the time. That's correct, Your Honor. But the reason why we came to this court was we think there were several legal errors made in the district court's judgment below, and we don't want to go back down there and have the same legal errors made again and again through repetitive filings. And so in our view, this court is the first place we needed to come to resolve the legal errors that were made in resolving Mr. Sekoja's compassionate release motion. Now, counsel, let's talk about what was actually before the district court at the time the motion was considered. What happened was your client had an elevated PSA, correct? That's correct. Do you remember what the number was? I think it was just below him having a 50% chance likelihood of prostate cancer. Okay. But you don't remember the number. I don't remember the number offhand, Your Honor. I'm sorry. But looking at what was before the court at that time, there was that indication but no diagnosis of cancer, correct? There was no diagnosis of cancer, but the BOP physician assistant said that this was a big problem and that testing needed to occur within 30 days. And then testing did not occur. That was in May. Testing had not occurred by the time the district court considered the motion in October. So five months had gone. Regardless of whether he has cancer, it was clear that he was not being adequately treated and tested for the cancer. And that was enough for the district court to, you know, at least consider the cancer claim. The district court found that there was no cancer claim that had been properly presented, but even the government had responded to the claims of cancer in several pleadings before the court. If we were to, if the panel were to deny the motion or affirm the denial of the motion without prejudice to your presenting the court with more detailed medical analysis of your client's position, are you telling us that we should send that to a different district judge because you have no faith that this particular district judge would not treat your client's condition fairly? No, Your Honor. I'm not saying that at all. I'm saying that we were... Well, you just argued, counsel, that the reason you want it decided here in your client's favor is because if we send it back and you have to refile, that judge is simply going to commit the same legal errors as was committed before. Did I hear you incorrectly? No, that is close. We are concerned that any judge that looks at this and looks at the prior opinion may commit the same legal errors of using the Second Circuit's case in Brooker as a standard with which to measure extraordinary and compelling circumstances. And there, of course, is the larger legal issue in this case about if there is even an applicable policy statement that constrains a district court. And, of course, we would love to have this court's decision on some of those issues before we would refile. This case would not go back to the same district court no matter what this court does because that district court judge re-retired in December 31st of last year. And so the case would likely go back to Judge Smith who had had the case for, I think, 10 years prior to the case being transferred to Judge Lacey. Thank you, counsel. Thank you. Mr. Hopwood, please mute your audio and video at this time. Attorney Zurier, if you could please unmute and introduce yourself on the record to begin. May it please the court, Lauren Zurier for the government. Judge Thompson had asked Defense Counsel about the status of Mr. Sikosha's cancer diagnosis. I do have information on that if the court wishes to consider information that occurred after the appeal was noticed. Otherwise, I'll focus on the record that the court has before it. Tell us what you know. What I know is this. In November of 2020, Mr. Sikosha was offered a consult with a urologist which he declined at that time because he was apparently awaiting a word from the previous presidential administration on whether he was going to receive a pardon and didn't want to be in quarantine pending his visit. He asked again in January and he was given a consult. He has had more tests. He still has no cancer diagnosis. I believe he has had an MRI or he's scheduled for an MRI with contrast. In other words, the status of things hasn't much changed, but the appropriate care has been taken. I think they're trying to schedule another visit this summer. The PSA level that Judge Hawkins had asked about at the time this case was decided was 9.76, which is in the range for a 25% chance of having cancer. But it should also be noted, as the record reflects, that Mr. Sikosha has had a long-standing inflamed prostate, which can also account for an elevated PSA level. So the idea that Judge Lisi was focusing on was it was not at all clear that there was a real cancer problem here, which is why she specifically said in her memo, in her decision, that if the future test revealed that a cancer diagnosis existed, then the defendant would be free to first seek relief from BOP based on the changed circumstances and then to come back to the district court if the relief from BOP were not forthcoming or not sufficient. To the extent that the defendant has concerns about a delay of treatment, which I might add was a problem for everyone, not just prisoners during the pandemic, there are other remedies that can be pursued besides a motion for compassionate release, civil rights action, things that would be filed in the Middle District of Florida, which is the district in which his BOP facility is located. So I don't think that there was any abusive discretion for the judge to have declined to consider the claim. It wouldn't have been abusive discretion if she had considered the claim for her to have denied it based on the record she was presented with, a fortiori, to simply decline to consider it, subject to considering it again with more evidence is certainly not prejudicial to the defendant and this court should affirm that process and that ruling. What do you have to say about the court's comparison of Mr. Sekosha to the defendant in Brooker? I don't read the district court's opinion as holding that of compassionate release ideals and that you could only get compassionate release if you met the standard in Brooker. What the defendant presented Brooker to, to Judge Lisi, was that he said something in his memo, something like, here Brooker, the defendant in Brooker, whose last name was Zullo, filed a motion very similar to one we filed here and the court in Brooker considered the length of the sentence and his age and a couple other factors and said that he could get compassionate release, although actually in Brooker it was just remanded for the district court to consider along those lines. Here, what Judge Lisi then did was say, well you're telling me that age at the time of commission of the crimes and rehabilitation and length of a sentence, all those things are possible for me to consider, but you don't have as favorable case in your circumstances as the defendant in Brooker did. You weren't young and impressionable at the time you committed the crimes. Your sentence was much deserved at the time. It was a life sentence for a crime that deserved a life sentence both then and under the current guidelines, whereas in Brooker the judge in that case had said, I'm not sure this is a fair sentence for you. So in other words, it's not the only universe of circumstances that could govern whether somebody would be released. Your point, Missouri, or I take it, is that Judge Lisi's comments about Brooker were not meant as standard setting, but were really meant to distinguish the defendant's reliance on Brooker as the precedent warranting his compassionate release. Exactly, Your Honor. At that point, Brooker was the only appellate court that had spoken to this issue and there were hundreds of district court decisions on both sides of the line as far as whether the district court had discretion to define the concept of extraordinary and compelling reason. So with Brooker being the only guidance out there, I think it's only natural that Judge Lisi would have looked to it as an example of what you could do and then say, well, nothing before me suggests this is a similar example. In the government's view of this case, do we have to make any such definition in this case? No, Your Honor. Obviously, if you were to decide the issue, the government would prefer you follow the 11th Circuit's decision in Bryant, but I think this is not the case where the gun is to your head to actually decide the issue because what Judge Lisi did was she simply assumed that she could follow the law as it was laid out in Brooker and then said, well, even if I had the discretion, this isn't the case where I'd exercise it. And I think this court could do the exact same thing and still affirm the ruling below. I just wanted to comment briefly on the 3553A factors that were discussed with defense counsel. I realize that the discussion in Judge Lisi's opinion is not overtly lengthy, but I think that's because of the nature of the extraordinary and compelling reasons that were raised, which have a great overlap with the 3553A factors. When you raise length of sentence as an extraordinary and compelling reason, you implicate the nature and circumstances of the offense and the question of disparity. You implicate all those factors twice over. So I think some of what Judge Lisi said in her first analysis carried through to her second analysis. But in the end, what she did wasn't refuse to consider factors or refuse to consider evidence. She simply balanced factors in a way that the defendant did not care for. She stressed the fact that he hadn't expressed remorse then. He still hasn't expressed remorse as far as I know. His crime is extremely serious. He hadn't been well behaved in prison. And his sentence wasn't disproportionate because all the defendants he presented as a basis for comparison had pled guilty. And this court has said many times that that's apples to kumquats, I think, as it said in Gonzales. And most importantly, this crime was of such a serious nature that in order to promote respect for the law, provide just punishment, and afford adequate deterrence and to protect the public, that those factors should be weighed most heavily. That's not an abuse of discretion. You can disagree with it, but that doesn't mean it's wrong. And this court has said that too. I believe you filed a 28-J recently of a case where, I don't remember which circuit it was, but it's Seventh Circuit that said that the length of the sentence can never be a consideration. Are you urging this court to adopt that? Is that why you filed it? I filed it to bring to the court's attention the fact that even in a jurisdiction like the Seventh Circuit, which has said that the district courts have discretion to define what an extraordinary and compelling circumstance is, that doesn't mean that their discretion extends so far that basically they can become a mini-parole board or regularly say a mandatory sentence should be a reason for reconsidering a sentence. In the Seventh Circuit in Ghan, it said that the courts have discretion, but that in order to avoid the wild west of compassionate release, courts should tend to follow the sentencing policy statement that currently exists. I'm assuming, based on the language that Judge Easterbrook used in that opinion, and I believe it was Easterbrook, that they've seen far too many cases where mandatory sentences were overturned that basically courts were reconsidering sentences all over again. In my 28-J letter, I said it was dicta, but the policy reasons that drove that dicta are the same as the policy reasons the government has pointed out in asking the court not to give courts freestanding discretion to describe extraordinary and compelling reasons. But again, you don't have to decide that issue. It's dicta, but you like it. Oh, yes, we're very fond of it. Thank you, Your Honor. If the court has no further questions, I believe the issue has been overwhelmingly briefed and 28-J to death, and I would ask the court to affirm the ruling. Thank you. Thank you. Attorney Zurier, please mute your audio and video at this time. Attorney Hopwood, just reintroduce yourself back on the record to begin. Yes, Your Honor, Sean Hopwood here. I want to just go back to the 3553A factors and something that my opposing counsel said. This was another area where the district court got it wrong and said that Stephen Sekoja has not expressed remorse and refuses to acknowledge the nature of the offense. J.A. of 58 is his declaration saying, I realized long ago that even though I had not been involved in dealing narcotics or committing acts of violence, my actions helped facilitate those who poisoned our society with drugs. He acknowledged the nature of the offense. The problem was he then presented mitigating circumstances that the judge did not seem to consider, including, again, even if someone, the nature of the offense is great, 30 years of imprisonment is nothing to sneeze at and has to be factored into whether the punishment has been adequate. As to the Seventh Circuit case, and I think the Sixth Circuit's held the same thing. By the way, Mr. Hopwood, that didn't sound very remorseful. The fact that he said that he recognized that he's been poisoning society with drugs and that he recognizes that the offense, even though he was not convicted of drug dealing, that his offense involved drug dealing. He recognized that and presented that, and to the extent that the district court said something else, she cited to the lawyer's pleadings, not his actual declaration, where he did express remorse. There were lots of things in the record that the district court did not address through the 3553A factors. As to the Seventh Circuit's decision, I'd tell you that they're answering the wrong question. The question is whether the Sentencing Commission could tomorrow, assuming it had a quorum, create a long-sentence criteria for compassionate release. It's clear it could. Section 994 of Title 28 says the only thing the commission's prevented from including as grounds for compassionate release are rehabilitation alone. Now, if the commission can create a long-sentence criteria tomorrow, certainly district courts can in the absence of a new and applicable and current policy statement. And so we would ask that the court reverse for the legal errors that have been committed, and because the judge did not take into consideration and address the mitigating circumstances under 3553A. Thank you very much, Your Honors. Thank you, Counselor. That concludes the arguments in this case. Attorney Hopwood and Attorney Zurier, you should disconnect from the hearing at this time.